IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT MARC EDELMAN and DIANA EDELMAN, | § § § | |
| Appellants, | § § | |
| v. | § § | 3:14-CV-4109-P |
| DREXEL HIGHLANDER LIMITED PARTNERSHIP, DGP, LLC, and R. GLENN WIGGINS, | § § § § | |
| Appellees. | § § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is Robert Marc Edelman ("Edelman") and Diana Edelman's ("Diana") (collectively "Appellants") appeal from the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. Appellants filed their initial brief on February 17, 2015. Doc. 6. Drexel Highlander Limited Partnership ("DHLP"), DGP, LLC ("DGP"), and R. Glenn Wiggins (collectively "Appellees" or "Plaintiffs") timely filed their brief on March 27, 2015. Doc. 11. Appellants seek a reversal of the bankruptcy court's judgment in favor of DHLP or, alternatively, reversal of the bankruptcy court's finding that this judgment is non-dischargeable. For the reasons set forth below, the Court AFFIRMS the decision of the bankruptcy court.

### I.    Background

This is an appeal from an adversary proceeding related to a Chapter 11 bankruptcy petition filed by debtor Robert Marc Edelman. In the adversary proceeding which is the subject of this appeal, Plaintiffs sued Edelman in state court for breaches of fiduciary duty, trespass,

fraud by nondisclosure, and violation of the Texas Theft Liability Act ("TTLA") (collectively the "State Court Action"). R. at 77-104. On the eve of trial, Edelman filed for Chapter 11 bankruptcy protection. R. at 2762-66. Plaintiffs removed the State Court Action for determination in the bankruptcy court and further sought a declaration that any judgment awarded was non-dischargeable. R. at 2767-73. The bankruptcy court has entered a final judgment in favor of DHLP[1] in the State Court Action and also found the judgment to be non-dischargeable under § § 523(a)(2), (a)(4), and/or (a)(6). R. at 4-9. In reaching its factual findings and conclusions of law, the bankruptcy court developed a detailed factual background that this Court adopts but will not repeat here. For purposes of this appeal, the Court will briefly review the parties and the bankruptcy court's final judgment.

### A. The Parties

Edelman and Wiggins were business partners, and together they directly and indirectly owned and/or managed various companies. Memorandum Opinion[2], Doc. 11 at 48. The relevant companies for purposes of this proceeding are Plaintiff DHLP, Plaintiff DGP, and non-party Drexel Development Company, LLC ("DDC"). Wiggins and Edelman each directly or indirectly own limited partnership interests in DHLP. *Id.* at 51. DHLP, owned the Drexel Highlander, a condominium complex at issue in the adversary proceeding below. *Id.* at 48. DHLP and DDC were parties to a development agreement whereby DDC provided DHLP with certain services regarding the Drexel Highlander. *Id.* at 53. Edelman and Wiggins were the sole members of DDC, each with 50% interest. *Id.* Finally, DHLP's general partner was DGP, of which Wiggins was the sole member. *Id.* at 51-52. However, in April 2006, Edelman was appointed Vice

---

[1] The bankruptcy court found that Wiggins and DHP did not suffer any damages independent of DHLP.

[2] The bankruptcy court's Memorandum Opinion appears to have been inadvertently omitted from the Record. Appellants list it in their index of the Record, but it was not included. The Memorandum Opinion is appended to Appellees' Brief and will be cited to by its docket entry number, i.e. Doc. 11 at [pg. #].

President of DGP and was granted the authority to act on behalf of DGP in its role as general partner of DHLP. *Id.* at 52.

### B. Bankruptcy Court's final judgment

Following a full trial and the filing of post-trial briefs, the bankruptcy court issued a seventy-eight (78) page memorandum opinion thoroughly detailing its findings of fact and conclusions of law in this case. *See* Doc. 11 at 44-121. The bankruptcy court subsequently held a separate hearing on the sole issue of attorneys' fees, which were recoverable by only one of the three plaintiffs and only for one of the several causes of action on which that plaintiff prevailed. *See* R. at 1728-1823. Following this hearing, the bankruptcy court entered final judgment in favor of Plaintiff DHLP. R. at 4-9. Specifically, the memorandum opinion and final judgment awarded DHLP damages for three categories of conduct. R. at 6-7. In all three categories there were multiple causes of action on which DHLP could recover, but the bankruptcy court carefully noted these recoveries could not be duplicative and so the lower award of each category was merely an alternative cause of action in the event the primary cause of action was overturned on appeal. R. at 6-7 nn.1-5. The bankruptcy court further ordered that the judgment was non-dischargeable under §§ 523(a)(2), (a)(4), and/or (a)(6). R. at 8.

#### 1. Occupancy of Unit 2F

The bankruptcy court found that the Edelmans were living in Unit 2F of the Drexel Highlander for fifty-six (56) months without a lease and without paying rent. Doc. 11 at 63-64. The bankruptcy court found this rent-free occupancy was a trespass and awarded actual damages of $302,40000. *Id.* at 63-68. The bankruptcy court further awarded exemplary damages of $75,000.00, noting that exemplary damages were only appropriate for the time period following the Edelmans' receipt of a Notice to Vacate. *Id.* at 68-69. Appellants do not challenge the

damages awarded for the trespass claim. *See generally* Doc. 6. (omitting any challenge to the bankruptcy court's finding of trespass).

The bankruptcy court also found the Edelmans' occupancy of Unit 2F to be a breach of Edelman's fiduciary duty to DHLP. Doc. 11 at 76-77. For this claim, the bankruptcy court awarded the same $302,400.00 in actual damages, but increased exemplary damages to $150,000.00. *Id.* at 98-99. The Court noted that under a breach of fiduciary duty, the exemplary damages were appropriate for the entire time period in which the Edelmans occupied Unit 2F. *Id.* The bankruptcy court entered final judgment awarding DHLP the breach of fiduciary duty damages, but noted that if the breach of fiduciary duty claim was overturned on appeal then the damages award for the trespass claim would apply. *R.* at 6 & nn.2-3.

### 2. Illegal Commissions

The next category of conduct for which damages were awarded to DHLP was illegal commissions Edelman directed to be paid to his wife Diana. *R.* at 6. It was undisputed that Diana was not a licensed real estate broker or salesperson Doc. 11 at 61. Accordingly, the bankruptcy court found that Edelman had breached his fiduciary duty to DHLP by authorizing commissions to be illegally paid to his wife. *Id.* at 77-80. The bankruptcy court awarded DHLP $462,604.50 in actual damages and an additional $250,000.00 in exemplary damages for this breach of fiduciary duty. *Id.* at 99.

The bankruptcy court also found in favor of DHLP on its fraud by nondisclosure claim regarding the illegal commissions. *Id.* at 108-109. The bankruptcy court awarded the exact same actual and exemplary damages as it did for the breach of fiduciary claim regarding the illegal commission. *Id.* at 110. Because the award amounts were identical, final judgment was entered based on both theories. *R.* at 6 & n.1.

### 3. Disputed Draws

Finally, the bulk of the bankruptcy court's final judgment was related to more than $2,510,000.00 that was drawn under a DHLP loan agreement and deposited directly into a DDC deposit account (the "Disputed Draws"). Doc. 11 at 54. The bankruptcy court found Edelman breached his fiduciary duty to DHLP by improperly directing DDC to draw funds under DHLP's loan agreement. *Id.* at 80-91. The bankruptcy court found that $34,394.35 dollars of the Disputed Draws was used for the benefit of DHLP and subtracted that amount from the total Disputed Draws. *Id.* at 91-94. In turn, the bankruptcy court awarded DHLP $2,475,605.65 in actual damages and an additional $1,000,000.00 in exemplary damages for this breach of fiduciary duty. *Id.* at 98.

The bankruptcy court also found this conduct to be in violation of the Texas Theft Liability Act ("TTLA"). *Id.* at 100-103. The bankruptcy court awarded DHLP the same actual and exemplary damages for its TTLA claim as it awarded for the breach of fiduciary duty claim related to the Disputed Draws. *Id.* at 102-103. The TTLA, however, provides for $1,000.00 in statutory damages and reasonable attorneys' fees, which the bankruptcy court also awarded. *Id.* at 102. Accordingly, the bankruptcy court entered final judgment awarding DHLP $2,475,605.65 in actual damages, $1,000.00 in statutory damages, and $1,000,000.00 in exemplary damages under the TTLA claim. R. at 7. After conducting a hearing on attorneys' fees, the bankruptcy court awarded DHLP an additional $1,392,432.90[3] in reasonable attorneys' fees under the TTLA. R. at 7. The court noted that if the TTLA claim failed DHLP would still recover $2,475,605.65 in actual damages and $1,000,000.00 in exemplary damages under its

---

[3] The court also awarded conditional costs of appeal related to its TTLA claim, but that ruling was not challenged on appeal. R. at 8.

breach of fiduciary duty claim, but would not recover the additional $1,000.00 in statutory damages or any attorneys' fees. R. at 7 nn. 4-5.

The bankruptcy court found the entire damages award to be non-dischargeable under 11 U.S.C. 523(a)(2)(A), (a)(4), and/or (a)(6). Appellants now challenge the judgment and also the bankruptcy court's finding that the judgment is non-dischargeable.

## II.     Legal Standard

This Court reviews the bankruptcy court's findings of fact for clear error and conclusions of law de novo. *See In re U.S. Abatement Corp.,* 79 F.3d 393, 397 (5th Cir.1996). An award of damages is a finding of fact, which is reversed only for clear error. *Delahoussaye v. Performance Energy Servs., L.L.C.*, 734 F.3d 389, 394 (5th Cir. 2013). "A finding is clearly erroneous and reversible only if, based on the entire evidence, the reviewing court is left with the definite and firm conviction that a mistake has been made." *In re Young,* 995 F.2d 547, 548 (5th Cir.1993) (internal quotation marks omitted). "This Court defers to the trier of fact in resolving conflicts requiring credibility determinations." *Galvan v. Cockrell,* 293 F.3d 760, 764 (5th Cir.2002). That extends to the "implicit rejection" of evidence. *Id. In re Mulligan Mint,* 516 B.R. 407, 409 (N.D. Tex. 2014). Finally, the Court reviews the bankruptcy court's award of attorneys' fees for abuse of discretion. *In re Cahill,* 428 F.3d 536, 539 (5th Cir.2005) (citations omitted). "An abuse of discretion occurs where the bankruptcy court (1) applies an improper legal standard or follows improper procedures in calculating the fee award, or (2) rests its decision on findings of fact that are clearly erroneous." *Id.* (citing *In re Evangeline Refining Company,* 890 F.2d 1312, 1325 (5th Cir.1989)).

## III.    Analysis

Appellants raise three issues on appeal. They first assert that the bankruptcy court erred because DHLP did not prove Edelman owed DHLP a fiduciary duty. Second, they assert that the bankruptcy court erred in its damages award because DHLP did not prove actual damages and did not prove exemplary damages by clear and convincing evidence. Finally, Appellant's argue that the bankruptcy court erred in its award of attorney fees because the fees included work done for two plaintiffs who did not prevail, and because the law firm did not properly segregate the work done on the TTLA cause of action from DHLP's other causes of actions. The Court will address each of these points of error in turn.

### A.  Fiduciary Duty

The bankruptcy court made two findings regarding whether Edelman owed a fiduciary duty to DHLP. First, the bankruptcy court considered whether Edelman owed a fiduciary duty to DHLP under state law. Doc. 11 at 71-76. After finding that he did, the bankruptcy court proceeded to find Edelman breached this duty and caused harm to DHLP, and awarded damages accordingly accordingly. *Id.* at 76-99. Next, the bankruptcy court considered whether Edelman was "acting in a fiduciary capacity" under the Bankruptcy Code, such that this judgment would be non-dischargeable. *Id.* at 114-18; *see also* 11 U.S.C. § 523(a)(4) (creating an exception to discharge for "fraud or defalcation while acting in a fiduciary capacity."). The bankruptcy court found that he was acting in a fiduciary capacity, and so the judgment awarded in the State Court Lawsuit was non-dischargeable. Notably, the bankruptcy court's finding that Edelman was acting in a fiduciary capacity was not its sole basis for finding the judgment non-dischargeable. *See* Doc. 11 at 112-14 and 118-19 (discussing non-dischargeability under 11 U.S.C. § 523(a)(2)(A) and (a)(6).

Appellants' brief is unclear whether Appellants' challenge both findings of a fiduciary duty or only the finding of "acting in a fiduciary capacity" under the Bankruptcy Code. For example, Appellants cite the state law elements of a breach of fiduciary duty claim but only argue that "DHLP did not prove Edelman owed it a fiduciary obligation under the Bankruptcy Code." Doc. 6 at 19-23. The Court is unsure whether Appellants are challenging the finding of liability under state law, the finding of non-dischargeability under the Bankruptcy Code, or both. In order to ensure all of Appellants' intended arguments are addressed, the Court will broadly construe Appellants' brief and address both possible arguments.

### 1.  State Law Breach of Fiduciary Duty Claim

To prevail on its breach of fiduciary duty claim, DHLP had to show, *inter alia*, a fiduciary relationship existed between DHLP and Edelman. *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007). The bankruptcy court correctly stated that "under Texas law, the issue of control has always been the critical fact looked to by the courts in determining whether to impose fiduciary responsibilities on individuals whose actions directly determine the conduct of a general partner of a limited partnership." Doc. 11 at 73 (quoting *In re Harwood*, 637 F.3d 615, 621 (5th Cir. 2011) (internal quotations omitted); *accord. In re Bennett*, 989 F.2d 779, 789 (5th Cir. 2011).

Appellants argue Edelman lacked the necessary control over DHLP to create a fiduciary relationship, noting he was neither an officer nor a general partner. R. at 1077-78. Apellants further contend Edelman's functions and authority as Vice President of DGP, a different company, were expressly limited by the DGP Certificate of Resolution that appointed him ("Certificate of Resolution"). *Id.* Appellants' argument is largely centered on the language of the Certificate of Resolution. Specifically, they argue Edelman's "role as vice president [of

DGP] was limited to sales of condominium units at Drexel Highlander, and he was given authority to negotiate the sale, as well as execute documents on DHLP's behalf required to consummate the sale." *Id.* at ¶ E. According to Appellants, the terms of the Certificate of Resolution "do not give Edelman has [sic] a general right of management for DGP or DHLP, [but] only to negotiate the terms of condominium sales and [to] sign associated transactional documents." Doc. 6 at 22.

The bankruptcy court found that although the Certificate of Resolution did describe Edelman's authority to sell the Drexel Highlander condominium units, it did not place any actual limits on Edelman's control and management of DGP and, in turn, DHLP. Doc. 11 at 71. Furthermore, the bankruptcy judge made numerous other factual findings indicating Edelman controlled all aspects of DHLP's business operations—not just condominium sales—during the relevant period. *Id.* at 71-73. In accepting the evidence supporting Plaintiffs assertion that Edelman exercised total control over DHLP, the bankruptcy court 'implicitly recjected' Edelman's arguments to the contrary. This evidentiary determination was the bankruptcy court's to make and, after reviewing the Record, the Court sees no clear error that would give it grounds to disrupt those factual finding.

According to the DHLP Partnership Agreement, "the management and control of the Partnership [DHLP] . . . rest exclusively with the General Partner [DGP]." Doc. 11 at 71 (quoting the DHLP Partnership Agreement). It continued, "[t]he General Partner may designate one or more parties to act as agents to carry out its duties and responsibilities [i.e. management and control] to the Partnership." *Id.* In other words DHLP was managed and controlled exclusively by whoever DGP designated to carry out its duties to DHLP.

Through the Certificate of Resolution, DGP designated Edelman to be that person.   The Certificate of Resolution stated:

> RESOLVED, that Robert Edelman ("Designated Officer") is the Vice President of the LLC [DGP] and is authorized to act for the LLC, in its capacity as general partner of the Partnership [DHLP]; *and*
>
> RESOLVED, that the Designated Officer is authorized for, in the name of, and on behalf of the LLC, in its capacity as general partner of the Partnership, to negotiate the terms and conditions of the sale of the Property [Drexel Highlander] as the Designated Officer deems best and is authorized to carry out the sale of said Property, and to consummate such sale by executing and delivering a deed or deeds to the Property, and any other documents as may be necessary or desirable to consummate the sale of the Property, for and in behalf of the LLC, in its capacity as general partner of the Partnership; *and*
>
> RESOLVED, that the Designated Officer is hereby *authorized and directed to do all other acts and things* as may be required to carry out, perform, and give effect to the terms and provisions of these resolutions and the aforesaid documents for and in behalf of the LLC, in its capacity as general partner of the Partnership[.]

*Id.* at 52 (quoting the Certificate of Resolution) (emphasis added).

The Court agrees with the bankruptcy court.  The three quoted paragraphs are clearly written in the conjunctive, yet Appellants' argument ignores the entire first and third paragraphs. It expressly states, Edelman "is authorized to act for [DGP], in its capacity as general partner of [DHLP]." *Id.*  Without any limitation of authority, that clause alone might be enough to find that Edelman had the requisite control over DHLP to create a fiduciary relationship.  And the Certificate of Resolution does not limit Edelman's authority; in fact, it expands it stating he is "authorized and directed to do *all other acts and things* as may be required to carry out, perform, and give effect to the terms and provisions of these resolutions and the aforesaid documents for and in behalf of the LLC, in its capacity as general partner of the Partnerships." *Id.*

Based on its review of the Record, the Court sees no clear error in the bankruptcy court's findings of facts and so it defers to the bankruptcy judge's on the relevant evidentiary issues.   Accordingly, the express terms of the Certificate of Resolution, along with the bankruptcy court's factual findings demonstrate that Edelman was authorized to, and in fact did, exercise total control over DHLP during the relevant period and as a result, Edelman owed a fiduciary duty to DHLP.

### 2.  Exception from Discharge Under the Bankruptcy Code

Appellants also appear to be challenging the bankruptcy court's finding that Edelman was "acting in a fiduciary capacity" under 11 U.S.C. § 523(a)(4).   The Court need not reach this question.

Section 523 of the Bankruptcy Code provides a number of exceptions to dischargeability. *See generally* 11 U.S.C. § 523.   In addition to its finding that Edelman was acting in a fiduciary capacity under section 523(a)(4), the bankruptcy court found two other exceptions applied to this case.   Doc. 11 at 112-120.   First, § 523(a)(2) provides that a discharge "does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by: (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . ."   11 U.S.C. § 523(a)(2)(A).   Having found Edelman committed fraud by nondisclosure by failing to disclose that Diana was not a licensed real estate broker or salesperson the bankruptcy court found actual damages of $462,604.50 and related exemplary damages non-dischargeable under 11 U.S.C. § 523(a)(2)(A).   Doc. 11 at 112-114 and 119-120.

Next, § 523(a)(6) provides that a discharge "does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of

another entity." 11 U.S.C. § 523(a)(6).  The bankruptcy court found that Edelman's state law breaches of fiduciary duty with respect to the occupancy of Unit 2F and the Disputed Draws, along with Edelman's TTLA violation, were willful and malicious under this section.  The bankruptcy court concluded that damages of $302,400.00 for the occupancy of Unit 2F, $2,475,605.65 for the Disputed Draws, and $2,475,605.65 for the TTLA violation were non-dischargeable under 11 U.S.C. § 523(a)(6).  Doc. 11 at 118-119.  Additionally, the bankruptcy court found the related statutory and exemplary damages to also be non-dischargeable.  *Id.* at 119-120.

Appellants did not challenge the bankruptcy court's findings of non-dischargeability under §§ 523(a)(2) or (a)(6).  Accordingly, the Court does not need to reach the question of whether DHLP proved Edelman was acting in a fiduciary capacity for purposes of § 523(a)(4) and the entire judgment is non-dischargeable under §§ 523(a)(2) and (a)(6).

### B.  Damages

Appellants' second point of error is that the bankruptcy court erred in awarding damages to DHLP.  They assert "[t]he trial court erred because DHLP did not prove its actual damages . . . and DHLP did not prove by clear and convincing evidence that DHLP was damaged as a result of Edelman's fraud, gross negligence, or malice."

### 1.  Actual Damages

An award of damages is a finding of fact, which is reversed only for clear error.  *Delahoussaye v. Performance Energy Servs., L.L.C.*, 734 F.3d 389, 394 (5th Cir. 2013).  In breach of fiduciary duty cases, "litigants and courts must be flexible and imaginative in calculating the proper measure of damages."  *Floyd v. Hefner*, 556 F. Supp. 2d 617, 652 (S.D. Tex. 2008) (citing *Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 487 (5th Cir. 2000)).

Furthmore, damages include "any loss" suffered by the company as a result of the breach of fiduciary duty. *Floyd*, 556 F. Supp. at 652 (citing *Meyers v. Moody*, 693 F.2d 1196, 1214 (5th Cir. 1982). Here, the bankruptcy court clearly indicated its award was based on the amount of actual harm caused to DHLP by Edelman's breach.

Appellants contend actual damages were not proven because there was no tracing of the Disputed Draws, and because DHLP's damages expert Jennifer Killion's testimony was inaccurate and contradictory. Appellants first contend Ms. Killion's testimony was inaccurate by pointing the Court to a portion of the bankruptcy court's discussion of damages where the bankruptcy judge "does not agree with the Plaintiff's calculation." Doc. 11 at 94-95. This discussion, however, related to an alternative calculation of damages based on the benefit Edelman gained, rather than the harm he caused, as a result of his breach. Because the Court accepts the bankruptcy court's damages calculation based on harm caused to DHLP, the Court need not consider whether there was any error in an alternative damages calculation. Furthermore, that there may have been an inaccuracy in a portion of a witness' testimony does not preclude the factfinder from finding other testimony of hers credible. If anything, this discussion highlights the level of attention and careful, objective consideration given to the testimony and evidence relied on for its damages calculation.

Appellants next assert Ms. Killion's testimony was contradictory by pointing to two answers Ms. Killion gave in nearly sixty pages of trial transcripts. In the first of these answers, Ms. Killion testified that the "total income" on DDC's 2008 income statement was made up of various income sources including commissions, contractor fees, and developer fees. R. at 1436. Ms. Killion is later asked where DDC was getting its cash to cover expenses, which were

remaining the same, if its revenue was dropping. She answered "during this time frame, it received cash from the DHLP loan." R. at 1438.

As a threshold matter, it is unclear what weight, if any, was given to these specific answers in the bankruptcy court's determination of damages; nonetheless, the Court does not see these statements as contradictory. The first answer is a non-exhaustive list of types of income sources. The latter answer explains an additional source which allowed DDC to make ends meet, so to speak, at a time when the listed sources of income could no longer cover DDC's expenses. Regardless of whether the bankruptcy court relied on this portion of Ms. Killion's testimony, it is clear the bankruptcy court carefully considered and was in the best position to judge the credibility of this Ms. Killion's testimony. The Court sees no clear error in the bankruptcy courts factual findings based on Ms. Killion's testimony and the accompanying evidence.

Edelman also asserts, in a single line, that there was no tracing of money deposited in DDC's bank account. This asserted error, even if the Court agreed, does not change the bankruptcy court's judgment. As previously discussed, the bankruptcy court offered two distinct damages calculations. Under the bankruptcy court's primary theory, it is immaterial where the money went as long as it did not go to DHLP. To dispute damages under this theory, Edelman had to show that a portion of the Disputed Draws went to DHLP or was used for the benefit of DHLP; or, in other words, that the Disputed Draws did not cause harm to DHLP. However, the only evidence Edelman offered disputing harm caused to DHLP was testimony by Diana that $34,394.35 of the Disputed Draws paid for dry cleaning expenses for staff working for DHLP. This amount was properly subtracted from the total amount of Disputed Draws in the bankruptcy court's damages calculations.

As previously noted, the Court agrees with the bankruptcy court's damages calculations using the harm caused to DHLP approach, so the Court need not address the failure to trace funds under the bankruptcy court's alternative damages calculation based on the benefit to Edelman.   Nevertheless, the Court is of the opinion that the failure to trace funds would not affect the bankruptcy court's damages calculations under its alternative approach.   Although the ability to trace the money is of greater importance under the benefit to Edelman approach, the bankruptcy court noted its inability to trace the Disputed Draws was not fatal.  Doc. 11 at 95. The bankruptcy court found it to be clear that, "without the misappropriated funds, DDC would not have been able to pay the vast majority of its expenses, including the amounts it paid to Edelman or for his direct or indirect benefit, after the first Disputed Draw was made."  *Id.* Furthermore, the Court agrees with the bankruptcy court that Edelman should not be allowed to benefit from the inability to trace the money when it was he "who established the account in question, directed the Disputed Draws and subsequent co-mingling of funds, and then used those co-mingled funds for his personal benefit, all while exercising control over each of DDC, DGP, and DHLP."  *Id.* at 95-96

Based on the foregoing, the Court finds no clear error in the bankruptcy court's actual damages calculations.

### 2.  Exemplary Damages

Edelman next argues exemplary damages were not proven by clear and convincing evidence.  Texas law provides that "exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence." Tex. Civ. Prac. Rem. § 41.003.  But, where "a fiduciary gains a benefit by breaching his

fiduciary duty, willful and fraudulent acts may be presumed." *In re Sherali*, 490 B.R. 104, 121 (citing *Lesikar v. Rappeport*, 33 S.W.3d 282, 310 (Tex. App. – Texarkana 2000, pet. denied). "[T]he determination of whether to award exemplary damages and the amount of exemplary damages to be awarded is within the discretion of the trier of fact." *Id.* at § 41.010.

Edelman's entire argument is that there is no evidence that he intended to deprive DHL of the Disputed Draws. The bankruptcy court, however, found by clear and convincing evidence that "Edelman had the specific *intent* to cause substantial injury or harm to DHLP by . . . permanently *depriving* DHLP of its funds." App. At 60 (emphasis added). It is worth noting that the intent to deprive is an element for TTLA violations, and is not relevant for determining whether to award exemplary damages generally. Accordingly, this argument would hardly save Appellants. Even if Appellants were correct in their assertion that there was no evidence that Edelman intended to deprive DHLP of the Disputed Draws, DHLP would still recover its entire award of exemplary damages under its breach of fiduciary duty claims.

DHLP was awarded $1,000,000.00 for a breach of fiduciary duty related to the Disputed draws, $150,000.00 for a breach of fiduciary duty related to the Edelmans' occupancy of Unit 2F, and $250,000.00 for a breach of fiduciary duty related to the illegal commissions. Because fraudulent acts may be presumed where a fiduciary gains a benefit by breaching his fiduciary duty, the presumed fraudulent acts satisfy at least one of the grounds on which exemplary damages may be awarded, i.e. fraud. The bankruptcy court further justified the award of exemplary damages finding, by clear and convincing evidence, that Edelman acted with malice with regards to the Disputed Draws and occupancy of Unit 2F.

Given these well-reasoned findings and thorough analysis, the Court finds no clear error in choosing to award exemplary damages or in the amount of that award.

## C. Attorney Fees

Appellants' third issue on appeal is whether the bankruptcy court erred in the amount of attorneys' fees it awarded. The bankruptcy court awarded attorneys' fees under the Texas Theft Liability Act, which allows the prevailing party to recover reasonable attorney's fees. See Tex. Civ. Prac. & Rem. Code § 134.005(b). The court reviews the bankruptcy court's award of attorney's fees for abuse of discretion. *In re Cahill,* 428 F.3d 536, 539 (5th Cir.2005) (citations omitted). "An abuse of discretion occurs where the bankruptcy court (1) applies an improper legal standard or follows improper procedures in calculating the fee award, or (2) rests its decision on findings of fact that are clearly erroneous." *Id.* (citing *In re Evangeline Refining Company,* 890 F.2d 1312, 1325 (5th Cir. 1989)).

The Texas Supreme Court has provided eight (8) factors to consider in determining whether a fee award is reasonable. *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 818 (Tex. 1997). These factors are:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.* Additionally, when a party prevails on multiple claims, not all of which allow for the recovery of attorneys' fees, Texas law requires the party to "segregate fees between claims for which they are recoverable and claims for which they are not." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). The bankruptcy court applied the proper legal standards in calculating the fee award.

Appellant contends the award of attorneys' fees was excessive because DHLP failed to segregate fees incurred by it from fees incurred by the other two plaintiffs, and also because DHLP failed to segregate fees incurred in prosecuting its TTLA claim from fees incurred prosecuting its other causes of action. Appellants' conclusory assertion that the fees were not segregated is not supported by the record. To the contrary, DHLP appears to have made diligent efforts to properly segregate its fees and the bankruptcy court was satisfied with its efforts.

DHLP presented complete, unredacted fee invoices along with redacted invoices showing only fees incurred for DHLP's TTLA claims. After segregating fees incurred for DHLP's TTLA claim, DHLP further reduced these fees by fifteen (15) percent to account for block time entries including work on DHLP's TTLA claim. The bankruptcy court noted that Edelman presented "no evidence disputing or contradicting Mr. Karuth's [DHLP's attorney] testimony with respect to either the approach he took or the further reduction that he felt appropriate in the evidence." R. at 1817:2-5. The bankruptcy judge went on to summarize Appellants' argument opposing the fee award as a "simple statement . . . that it's too much money." R. at 1819:17.

Obviously, the bankruptcy judge chose to believe the specific and detailed testimony presented by DHLP over Appellants' conclusory argument. The bankruptcy court did not apply an improper legal standard or follow improper procedures in calculating the fee award. Further,

this Court does not find any clear error in any of the bankruptcy court's findings of fact related to the award of attorneys' fees.

## IV. Conclusion

In summary, the Appellants only assignment of legal error is the bankruptcy court's determination that Edelman owed DHLP a fiduciary duty. After reviewing the record and applying the facts as determined by the bankruptcy court, this Court agrees that Edelman owed DHLP a fiduciary duty. The remainder of this appeal ultimately rests on factual determinations that the bankruptcy court was entitled to make. This Court found no clear error in any of the challenged findings of fact. Accordingly, there is no reason to disturb the bankruptcy court's final judgment and it is therefore AFFIRMED.

Signed this $28th$ day of September, 2015.

JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE